UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AKIRO, LLC,                                          :
                                                     :          Case No.:  12-CV-5775
                          Plaintiff,                 :
                                                     :
         – against –                                 :          The Hon. Jed S. Rakoff (U.S.D.J.)
                                                     :
HOUSE OF CHEATHAM, INC.,                             :
*and* ROBERT H. BELL,                                :          ECF Case
                                                     :
                          Defendants.                :
-----------------------------------------------------------------X

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT ON ALL CLAIMS SPECIFICALLY ASSERTED AGAINST
DEFENDANT, HOUSE OF CHEATHAM, INC., AS SET FORTH IN THE COMPLAINT**

CARTER  PEK, P.C.

By:   D. Reeves Carter, Esq.
      Matthew A. Pek, Esq.
110 Wall Street, 11th Floor
New York, New York 10005
Tel.:   (212) 709-8095
Fax:    (212) 943-2300
*Counsel for Plaintiff, Akiro, LLC*

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................................. i

**TABLE OF AUTHORITIES** ......................................................................................................... ii

**PRELIMINARY STATEMENT** ................................................................................................... 1

**ARGUMENT** ................................................................................................................................ 1

**I.    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT** ................................................. 1

    **A.**   **All *Polaroid* Factors Favor Plaintiff** .................................................................. 2

        1.   *The Strength of the MISS JESSIE'S Mark Factor Favors Plaintiff* ............................ 2

        2.   *The Similarity of Competing Marks Factor Favors Plaintiff* ..................................... 2

        3.   *The Proximity of the Goods and the Bridging the Gap Factors Favor Plaintiff* ....... 3

        4.   *The Actual Confusion Factor Favors Plaintiff* .......................................................... 4

        5.   *The Bad Faith Factor Favors Plaintiff* ...................................................................... 5

            i.   Defendant Intended to Intimate Plaintiff's MISS JESSIE'S Mark ...................... 6

            ii.  Defendant's "Advice of Counsel" Defense Fails .................................................. 6

        6.   *The Quality of the Goods Factor Favors Plaintiff* ..................................................... 8

        7.   *The Sophistication of Buyers Factor Favors Plaintiff* ............................................... 8

    **B.**   **Critical *Polaroid* Factors Favor Plaintiff** ................................................................ 9

    **C.**   **Plaintiff is Entitled to Summary Judgment on Related State Law Claims** ............... 10

**CONCLUSION** ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page #**

*Arrow Fastener Co., Inc. v. Stanley Works*,
   59 F.3d 384 (2d Cir. 1995) ........................................................................................ 6

*American Chicle Co. v. Topps Chewing Gum, Inc.*,
   208 F.2d 560 (2d Cir. 1953) ...................................................................................... 6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579, 113 S.Ct. 2786 (1993) ......................................................................... 3

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway and Sons*,
   523 F.2d 1331 (2d Cir. 1980) .................................................................................... 8

*Kuklachev v. Gelfman*,
   600 F.Supp.2d 437 (E.D.N.Y. 2009) ....................................................................... 10

*Lapine v. Seinfeld*,
   No. 09-4423-cv, 375 Fed.Appx. 81, 2010 WL 1688713 (2d Cir. Apr. 28, 2010) ..... 6

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
   799 F.2d 867 (2d Cir. 1986) .................................................................................. 4, 8

*Mobileye, Inc. v. Picitup Corp.*,
   No. 12 Civ. 1994, 2013 WL 830837 (S.D.N.Y. Mar. 5, 2013) (**Rakoff, J.**) ...... 9, 10

*Playtex Prods. V. Georgia-Pacific Corp.*,
   390 F.3d 158 (2d Cir. 2004) ...................................................................................... 6

*Streetwise Maps, Inc. v. Vandam, Inc.*,
   159 F.3d 739, 744 (2d Cir. 1998) .............................................................................. 7

*Time Magazine Co. v. Globe Communications Corp.*,
   No. 08 Civ. 9726, 2009 WL 1564110 (S.D.N.Y. June 3, 2009) ............................... 4

*Worthington Foods, Inc. v. Kellogg Co.*,
   732 . F.Supp. 1417 (S.D.Ohio 1990) .................................................................... 4, 5

**Rules and Statutes**                                                                                    **Page #**

Fed. R. Civ. P. 56 ............................................................................................................ 1, 2

N.Y. Gen. Bus. L. § 350-1 ................................................................................................ 10

**PRELIMINARY STATEMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "FRCP"), plaintiff Akiro, LLC ("Plaintiff"), by and through its undersigned counsel, Carter Pek, P.C., respectfully submits this reply memorandum of law in response to the Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, as filed on behalf of defendant, House of Cheatham, Inc. ("Defendant" or "HOC") on March 12, 2013 (Doc. No. 31) (the "Opposition" or "Oppo."), and also in further support of Plaintiff's Motion for Summary Judgment, filed on even date (the "Motion").

Here, Defendant squanders all credibility by attempting to recast damaging correspondence that plainly exposes Defendant's failure to follow counsel advice and its transparent intent to infringe on Plaintiff's trademark, MISS JESSIE'S. Sadly, Defendant fails to understand that self-serving affidavits fool no one. The record is plain and nothing in Defendant's Opposition refutes or rebuts the facts and law that support Plaintiff's right to summary judgment and all requested relief.

**ARGUMENT**

**I.     PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT**

Confronted with its own correspondence that plainly exposes Defendant's determination to ape Plaintiff's MISS JESSIE'S Mark, Defendant attempts to twist the plain meaning of its correspondence by submitting self-serving (and less than credible) affidavits. However, no matter how hard (and inartfully) Defendant try to rewrite history, the record remains plain: (1) when selecting the AUNT JACKIE'S Mark, Defendant advised outside trademark counsel that "a few of the brands in the natural hair category have trade dress that conveys a premium, old fashioned look and feel. That is the direction we have chosen too;" (2) in reply, Defendant's outside trademark counsel warned Defendant that, "you really should need to stay away from anything that Miss Jennie's [sic] is using"; and (3) Defendants did not do so, but rather replaced "Miss" with "Aunt," revised its font, and proceeded to register the AUNT JACKIE'S, even though their outside counsel told Defendant that a "clearer" alternative, namely Miss Leslie's was available for registration.

1

There is simply no way to misread Defendant's plain intent. The facts show Plaintiff's right to summary judgment pursuant to Rule 56, particularly where, as here, additional facts (all supported by corroborating evidence) confirm the following: (1) Plaintiff's MISS JESSIE'S Mark is strong; (2) MISS JESSIE'S and AUNT JACKIE'S marks are similar in sound; (3) the respective marks are used in connection with the same products, namely hair care products formulated for natural and curly hair; (4) the competing products are both currently sold in the same channel of trade, namely over the counter beauty supply stores; and (5) there have instances of actual and initial confusion even though AUNT JACKIE'S products have been in the market for less than one year.

In sum, the facts and law support Plaintiff's Motion, and warrant the relief requested herein.

### A. All *Polaroid* Factors Favor Plaintiff

#### 1. *The Strength of the MISS JESSIE'S Mark Factor Favors Plaintiff*

Although it is far from clear, it does not appear that Defendant seriously challenges the strength of Plaintiff's MISS JESSIE'S mark. *See generally*, Oppo. In any event, a review of the record confirms that Defendant's own expert refers to the MISS JESSIE'S Mark as "a well-known mark" and a "strong mark." *See* Declaration of Mercedes Colwin in Support of Defendant's Motion for Summary Judgment (Doc. No. 15) ("Colwin Decl."), p. 2, ¶ 9, Defendant's Exhibit "G" (Expert Report of Dr. Bruce Isaacson, sworn to on February 4, 2013) ("Isaacson Report"), pp. 5-6.

#### 2. *The Similarity of Competing Marks Factor Favors Plaintiff*

As a primary matter, Defendant appears to misunderstand the entire nature of this dispute. To be clear, the competing marks are Plaintiff's federally registered mark, MISS JESSIE'S, and Defendant's AUNT JACKIE'S Mark, as identified in Defendant's own Rule 56.1(a) Statement of Undisputed Material Facts in Support of Defendant's Motion (Doc. No. 16) ("Def. 56.1(a)"), p. 6, at ¶ 36. Defendant's attempt to suggest that the infringing mark is "Aunt Jackie's Curls & Coils" is incorrect, and there is no record that Defendant ever registered such a mark.

2

Plaintiff stands by all of its arguments set forth in its moving papers that demonstrate the similarities between MISS JESSIE'S and AUNT JACKIE'S. *See e.g.,* Memorandum of Law in Support of Plaintiff's Motion (Doc. No. 22) ("Pl. Mem.") at pp. 13-17, 19-21. Further, Defendant was well of the similarities and asked its outside trademark counsel for his opinion as to "whether there was a risk that the trade dress [of Defendant's proposed "Miss Jackie's Curls and Coils, illustrations of which were provided to Defendant's trademark counsel] could be considered 'confusingly similar.'" Def. 56.1 Stmt., p. 5, at ¶ 27 (citing Colwin Decl., Defendant's Exhibit "C", DEF0056-58); *see also* Branch Aff. (Doc. No. 29), **Exhibit K**, at DEF0059 ("you really need to stay away from anything that Miss Jennie's [sic] is using"). Defendant hoped that merely replacing "Miss" with "Aunt" and changing the font of the mark would reduce the similarity. As the evidence confirms, Defendant was clearly mistaken.

Finally, as set forth in Plaintiff's moving papers, Defendant's heavy reliance on the alleged "expert" report of Robert Wallace (the "Wallace Report") is misplaced, because the Wallace Report does not meet a single *Daubert* requirement.[1] *See* Oppo., at pp. 2-4, 15-16, 19-21. Accordingly, the similarity of the competing marks factor favors Plaintiff.

      3. *The Proximity of the Goods and the Bridging the Gap Factors Favor Plaintiff*

It is pointless for Defendant to deny that these factors heavily favor Plaintiff. Defendant has repeatedly acknowledged that it considered MISS JESSIE'S products to be competition. Defendant's own Rule 56.1(a) Statement of Undisputed Facts confirms that, "[o]n February 22, 2012, Ms. White forwarded to Mr. Belzer illustrations of the proposed Miss Jackie's Curls & Coils product packaging and those of a competitor, Miss Jessie's … ." Def. 56.1(a) (Doc. No. 16), p. 5, ¶ 27. Likewise, Defendant's Rule 56.1 Statement also confirms that the competing products are currently both sold in over the counter beauty supply stores. *Id.*, at ¶¶ 38-39.

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

4. *The Actual Confusion Factor Favors Plaintiff*

Even Defendant admits – as it must – that there is *at least* one instance of actual confusion. *See, e.g.*, Oppo., at p. 19. Defendant's contention that a single instance of actual confusion is *de minimis* ignores the important fact that its AUNT JACKIE'S products have been in the market for less than one year and only for a few months when this action was first filed.

In short, there has been little time for an appreciable degree of actual confusion to have even occurred. Under similar circumstances, courts have confirmed that the lack of actual confusion is not a significant factor. For example, in *Time Magazine Co. v. Globe Communications Corp.*, the court reasoned that, "Time has not shown any evidence of actual confusion. However, evidence of actual confusion is not necessary for establishing a claim of likelihood of confusion. [] Moreover, in light of the circumstances … this is not fatal to Time's claim of trade dress infringement. Globe has published only one issue of *Celebrity*, which was on the stands for only a short period of time before Time brought this action." 712 F.Supp. 1103, 1111 (S.D.N.Y. 1989) (citations omitted). Similarly in *Worthington Foods, Inc. v. Kellogg Co.*, the District Court held that a lack of actual confusion "is not fatal, for as [the party] argues, [competing party's] cereal only recently began sales. Therefore, there has been no real opportunity for actual confusion." 732 F.Supp. 1417, 1443 (S.D.Ohio 1990). Likewise, in *Lois Sportswear*, *U.S.A., Inc. v. Levi Strauss & Co.*, the Second Circuit held "the record indicates that sales of appellant's jeans have been minimal in the United States thus far, and there has been little chance for actual confusion yet." 799 F.2d 867, 875 (2d. Cir. 1986). Still, the Court went on to conclude that, as here, "it would be unfair to penalize appellee for acting to protect its trademark rights before serious damage has occurred."[2] *Id.*

---

[2] Plainly, if the lack of the actual confusion is not a fatal to Plaintiff's infringement claim, then it must follow that lack of Plaintiff's own survey report cannot be fatal, which is the position that Defendant wrongly asserts. *See* Oppo., p. 20.

In any event, Defendant's reliance on the alleged "expert" Isaacson Report is misplaced as the Isaacson Report is rife with fundamental flaws, namely: (1) it fails to survey the proper universe of consumers because there is no evidence that the surveyed interviewees were at all familiar with either MISS JESSIE'S or AUNT JACKIE'S products; (2) the surveyed interviewees examined the products in isolation, rather than in an environment that approximated an actual shopping experience (oddly, the interviewees were not found at over the counter beauty supply stores, which is the main channel of trade for Defendant's AUNT JACKIE'S products); (3) the survey was incomplete because it was inexplicably limited to the review of only two of the four AUNT JACKIE'S products; and (4) the Eveready format survey is inappropriate in this instance, and such a format has been criticized for underestimating instances of actual confusion.  Pl. Mem., pp. 7-10.

Even if this Court were to afford the Isaacson Report any credibility (and this Court should not), then as in *Worthington Foods*, this Court should limit the import of such a report by concluding that such a report "merely tends to show that consumers are not now confused, only one factor to be considered in accessing the likelihood of confusion."  732 F.Supp. at 1146.

Accordingly, Plaintiff maintains that instances of actual confusion (particularly at the early stage of AUNT JACKIE's products introduction into the market) suggest that the actual confusion factor favors Plaintiff.

 5.   *The Bad Faith Factor Favors Plaintiff*

Defendant's bad faith and intent to copy is documented in its own correspondence.  Unable to deny the existence of such correspondence, Defendant attempts to twist the plain meaning of the correspondence and in the process insults the intelligence of the Court.  In short, Defendant's own correspondence confirm that Defendant intended to copy its competitors, specifically MISS JESSIE'S, and sought advise of legal counsel, but did not follow counsel's warning that "<u>you really to stay from anything that Miss Jennie's [sic] is using.</u>"  Branch Aff., **Exhibit K**, at DEF0059 (emphasis added).

i. Defendant Intended to Intimate Plaintiff's MISS JESSIE'S Mark

It is of no matter that Defendant now submits a self-serving affidavit purporting Defendant's "intent to differentiate what became the Aunt Jackie's line of products from other brands in the natural hair care product market." *See* Declaration of Dwan White in Opposition to Plaintiff's Motion (Doc. No. 34) (the "White Oppo."), p. 2, at ¶ 7. The record confirms that Defendant carefully studied the market and then decided to copy the look and feel of the major competitors, including MISS JESSIE'S.[3] Indeed, on February 22, 2012 (well before Defendant launched its AUNT JACKIE'S line), Dwan White wrote to outside trademark counsel and confirmed, "[a] few of the brands in this natural hair category have trade dress that conveys a premium, old fashioned look and feel. That is the direction we have chosen, too." *See, e.g.*, Colwin Decl., Defendant's Exhibit "C", at DEF0056. Plainly, Defendant did not set out to differentiate, but rather intended to copy other brands. Indeed, in utter contradiction of its main contention that it had no intent to imitate, Defendant argues that it had a right to "emulate the successful features of other successful brands in the natural-hair market." *See* Oppo., at p. 7.

Accordingly, there is simply no truth or merit to Defendant's assertion that it intended to differentiate its mark from competitors' marks, including MISS JESSIE'S.

ii. Defendant's "Advice of Counsel" Defense Fails

There is no dispute that Defendant's outside trademark counsel, Nathan Belzer, wrote to Defendant concerning Defendant's proposed use of the mark "Miss Jackie's":

---

[3] Defendant's reliance on *Playtex Prods., Inc. v. Georgia-Pac. Corp.*, for the proposition that "[p]rior knowledge of a senior user's mark does not, without more, create an inference of bad faith" is misplaced. 390 F.3d 158 (2d Cir. 2004). ***First***, the Second Circuit's ruling in *Playtex* was *superseded by statute*, as recognized by, *e.g.*, *Lapine v. Seinfeld*, No. 09-4423-cv, 375 Fed.Appx. 81, 2010 WL 1688713 (2d Cir. Apr. 28, 2010)). ***Second***, *Playtex* cites directly to *Arrow Fastener Co., Inc. v. Stanley Works*, in which the Second Circuit held that "[p]rior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith[,]" and that "[t]his is particularly true where the presumption of an exclusive right to use a registered mark extends only to the goods and services noted in a registration certificate." 59 F.3d 384, 397 (2d Cir. 1995). Here, the competing goods are the same, not different. Therefore, according to Judge Learned Hand, "[i]t is generally true that, as soon as we see that a second comer in a market has, for no reason he can assign, plagiarized the 'make-up' of an earlier comer, we need no more." *American Chicle Co. v. Topps Chewing Gum, Inc.*, 208 F.2d 560, 563 (2d Cir. 1953).

> We may need to discuss this a bit. <u>When I ran the search names, I did not know that you had specific competitors [sic] products in mind.</u> The searches can't really be done in a vaccum [sic]. At the very least, the script of MISS JACKIE'S absolutely needs to change … I think there is a risk that Miss Jennie's [sic] will complain about the trade dress overall and MISS JACKIE'S mark specifically. I think you would have good arguments in defense of such a claim.  But, the having to defend the claim could be the problem. <u>Taken individually, the elements are not confusingly similar. When taken as a whole (Miss Jennie's [sic] would argue) they get a bit closer</u>. Branch Aff., p. 5, ¶ 16, **Exhibit K**, at DEF000059 (emphasis added).[4] [5]

Despite the plain meaning the Defendant's counsel's advice and multiple concerns, Defendant misleads this Court to believe that "Nathan Belzer meant for HOC to stay away <u>only</u> from Plaintiff's product "Crème De La Crème." *See* Oppo., at p. 4 (emphasis added).  That is simply not true.  Mr. Belzer's comments and concerns extended far beyond "Crème De La Crème." Rather his comments speak direct to (1) Defendant's proposed use of "Miss Jackie's" ("I think there is a risk that Miss Jennie's [sic] will complain about the trade dress overall and MISS JACKIE'S mark specifically"); (2) Defendant's need to change the proposed script for "Miss Jackie's"; and (3) his concerns about the overall trade dress of Defendant's proposed Miss Jackie's mark.  *See generally*, Branch Aff., **Exhibit K**, at DEF0016, 0033, 0059 and 0083.

Even Defendant understood the scope of Mr. Belzer's concerns and in reply Defendant did, in fact, address multiple issues *beyond* "Crème De La Crème."  Defendant's attempt to mislead this Court is disingenuous at best.  It is equally insulting for Defendant to downplay the importance of its counsel's advise that the alternative mark "Miss Leslie's" was "clearer."  Plainly, Defendant was on notice of a "clearer" alternative – a fact that even Defendant does not – because it cannot – deny.

In sum, Defendant was on notice that moving forward with Miss Jackie's (or a variation, such as Aunt Jackie's) could result in litigation.  Rather than steer clear, Defendant anticipated and

---

[4] It is important to note that Defendants' own trademark counsel undercuts Defendants' representation that "Ms. White did not look at or review the Miss Jessie's brand or use it as a model or template at any point in the development of Aunt Jackie's."  Def. Mem., at p. 19.  Here, Defendants' counsel is responding to directly to Ms. White, who had forwarded a side-by-side comparison of the MISS JESSIE'S and MISS JACKIE'S products. He plainly confirms that Ms. White "had a specific competitor in mind."

[5] Defendant's outside trademark counsel, however, did conduct his search in a vacuum by conducting a narrow search. Courts are suspicious about limited searches and have found that, "the choice not to perform a more thorough trademark search 'reminds us of two of the famous trio of monkeys who by covering their eyes and ears, neither saw nor heard any evil."  *Streetwise Maps, Inc. v. Vandam, Inc*., 159 F.3d 739, 744 (2d Cir. 1998).

7

waited for opposition and litigation and even asked its trademark counsel, "as far as the risk with Miss Jackie's Curls and Coils, after filing how long will it take before we know whether there is an objection by the trademark office or owners?"  Branch Aff., **Exhibit K**, at DEF0033.  Had Defendant seriously considered or simply heeded its special trademark counsel's advice to "<u>stay away from anything that Miss Jennie's [sic] is using</u>," then this litigation might have been avoided.

Accordingly, the bad faith factor favors Plaintiff.  *See id.* at DEF0059 (emphasis added).

6. *The Quality of Goods Factor Favors Plaintiff*

There can be no legitimate dispute that MISS JESSIE'S products are superior to AUNT JACKIE'S products.  MISS JESSIE'S products are the go-to styling products used by professional hair stylists – a fact that even Defendant admits.  In contrast, Defendant casually alleges that AUNT JACKIE'S products were good enough for professionals, yet there is no evidence that any professional stylists use such products.  In any event, Defendant admits the law on this point "cuts both ways" and "cuts" against Defendant.  Therefore, this factor, too, favors Plaintiff.

7. *The Sophistication of Buyers Factor Favors Plaintiff*

Plaintiff does not dispute Defendant's contention that consumers of these competing products do and can read.  However, the Second Circuit has completely rejected the notion that very sophisticated consumers are less likely to be confused.  In *Lois* (*supra*, at p. 4), the infringement centered around stitching on competing jean brands, and the court found that, "we believe that it is a sophisticated jeans consumer who is most likely to assume that the presence of appellee's trademark stitching pattern on appellant's jeans indicates some sort of association between the two manufacturers. Presumably it is these sophisticated jeans buyers who pay the most attention to back pocket stitching patterns and their 'meanings.'" 799 F.2d at 872.[6]

Here too, Defendant cannot defeat Plaintiff's claims by simply asserting that consumers of the competing products are sophisticated. This factor, therefore, tips in Plaintiff's favor.

---

[6] Citing *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway and Sons,* 523 F.2d at 1331, 1342 (2d Cir. 1975) (sophisticated "buyers of quality pianos [] more likely mistakenly to associate piano [mfrs.] using similar trade names").

### B. Critical *Polaroid* Factors Weigh Against Defendant

Recently, this Court confirmed that, "the Second Circuit has explained that strength, similarity, and proximity are generally the three most important *Polaroid* factors … ." *Mobileye, Inc. v. Picitup Corp.*, No. 12 Civ. 1994, 2013 WL 830837, at *7 (S.D.N.Y. Mar. 5, 2013) (**Rakoff, J.**) (citations and quotations omitted) (denying summary judgment motion seeking dismissal of Lanham Act claims sounding in infringement). Here, all three factors weigh against Defendant.

*First*, Defendant does not challenge the strength of Plaintiff's MISS JESSIE'S Mark. Indeed, Defendant's alleged expert concluded that MISS JESSIE'S is a "well-known" and "strong mark." *See* Colwin Decl., p. 2, ¶ 9, Defendant's Exhibit "G", pp. 5-6, DEF0056-0058.

*Second*, although Defendant disputes that the competing marks are similar, they are similar. In fact, Defendant was concerned that it so slavishly copied the MISS JESSIE'S Mark and trade dress that Defendant was compelled to share its concern with its outside trademark counsel, and wrote, "[t]he images attached are of our new Miss Jackie's Curls & Coils and another competitor [Miss Jessie's]. A few of the brands in this natural hair category have dress that conveys a premium, old-fashioned look and feel. That is the direction we have chosen, too. We would like your opinion on whether could be a high risk or strong argument for Miss Jackie's trade dress and the attached competitor's trade dress being 'confusingly similar.'" Def. 56.1 Stmt., p. 5, at ¶ 27 (citing Colwin Decl., Defendant's Exhibit "C", DEF0056-0058); *see also id.*, p. 2, ¶ 9, Defendant's Exhibit "G", pp. 5-6, at DEF0056-0058. In reply, Defendant's counsel advised Defendant "to stay from anything that Miss Jennie's [sic] is using." *See* Branch Aff., **Exhibit K**, at DEF0059. Defendant, however, opted to only replace "Miss" with "Aunt" and to change the font of the mark. These minor changes are not sufficient, because MISS JESSIE'S and AUNT JACKIE'S are similar.

*Third*, even Defendant repeatedly acknowledges the competing products are similar and are sold in at least one identical channel of trade, namely over the counter beauty supply stores. *See*

Point I-A(5)(i), *supra* at p. 6. Under these circumstances, the Court must grant Plaintiff's Motion and all appropriate relief.

### C. Plaintiff is Entitled to Summary on Related State Claims

Having established that there are grounds to grant Plaintiff's federal claims, Plaintiff has likewise demonstrated that there are grounds to grant Plaintiff's state law claims. *See Kuklachev v. Gelfman,* 600 F. Supp. 2d 437 (E.D.N.Y. 2009). As this Court recently articulated, "New York's General Business Law § 360-l creates a cause of action for trademark dilution with two elements; (1) a distinctive mark capable of being diluted, and (2) a likelihood of dilution." *Mobileye*, 2013 WL 830837, at *17 (**Rakoff, J.**). Here, the record, as set forth above, demonstrates that Plaintiff also has a valid for dilution. Plaintiff has established that it has a valid and protectable mark and that Defendants' conduct is not only likely to cause confusion concerning the source and/or sponsorship of Defendants' products, but has, in fact, already caused actual confusion and initial consumer confusion. Accordingly, the same reasons that support Plaintiff's federal claim for unfair competition under the Lanham Act also support Plaintiff's state law claims.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion and for such other, further and different relief as this Court may deem just, warranted and appropriate under the circumstances here.

Dated: New York, New York
April 1, 2013

Respectfully Submitted,

CARTER PEK, P.C.

By: /s/ D. Reeves Carter
**D. Reeves Carter (DC-0045)**
**Matthew A. Pek (MP-3539)**
110 Wall Street, 11th Floor
New York, New York 10005
Tel.: (212) 709-8095
Fax: (212) 943-2300
*Attorneys for Plaintiff, Akiro, LLC*