UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

AKIRO LLC,

                      Plaintiff,                Case No.: 12 CV 5775 (JSR)

      vs.                              DEFENDANTS' PROPOSED
                                        JURY INSTRUCTIONS

HOUSE OF CHEATHAM, INC.,

                      Defendant

------------------------------------------------------------ X

Defendant House of Cheatham, Inc. ("House of Cheatham" or "Defendant"), by its attorneys, Gordon & Rees LLP, respectfully submits the following proposed jury instructions for use at trial:

## **DEFENDANT'S REQUEST TO CHARGE NO. 1.**

## **PRELIMINARY INSTRUCTIONS BEFORE TRIAL – DUTY OF JURORS[1]**

Members of the jury, we are about to begin the trial of a case about which you have heard some details during the process of jury selection.  Before the trial begins, however, there are certain instructions you should have in order to better understand what will be presented before you and how you should conduct yourself during trial.

The party who brings a lawsuit is called the plaintiff. In this action, the Plaintiff is Akiro LLC. The party against whom the suit is brought is called the Defendant. In this action, the Defendant is House of Cheatham, Inc.

---

[1] O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 101.01 Opening Instructions – Modified (5th ed. 2001).

1

Plaintiff alleges that Defendant infringed upon it registered trademark, "Miss Jessie's," when Defendant used its own registered trademark, "Aunt Jackie's," in connection with the sale of hair care products.

After all the evidence is presented during the trial, you will be given specific instructions on the law relating to Plaintiff's claims, which you must apply to the facts as you determine them.

By your verdict, you will decide disputed issues of fact.  I will decide all questions of law that arise during the trial, and before you retire to deliberate at the close of the case, I will instruct you on the law that you must follow and apply in deciding upon a verdict.

Since you will be called upon to decide the facts of this case, you should give careful attention to the testimony and evidence presented for your consideration, bearing in mind that I will instruct you at the end of the trial concerning the manner in which you should determine the credibility or "lack of credibility" of each witness and the weight to be given to their testimony. During the trial, however, you should keep an open mind and should not form or express any opinion about the case one way or the other until you have heard all of the testimony and evidence, the closing arguments of the lawyers and my instructions to you on the applicable law. While the trial is in process, you must not discuss the case in any manner among yourselves or with anyone else, nor should you permit anyone to discuss it in your presence.

From time to time during the trial, I may be called upon to make rulings of law on objections or motions made by the parties.  It is the duty of the attorney, on each side of a case, to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible.  You should not show prejudice against an attorney or his or her client because the attorney has made objections.  You should not infer or conclude from any ruling or

2

other comment I may make that I have any opinions on the merits of the case favoring one side or the other.  If I sustain an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions about the question itself.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing with regard to questions of law or procedure that require consideration by the Court alone.  On some occasions, you may be excused from the courtroom for the same reason.  I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

You must perform your duties as jurors without bias or prejudice to any party.  The law does not permit you to be governed by sympathy, prejudice or public opinion.  All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is given to you and reach a just verdict, regardless of the consequences.

## DEFENDANT'S REQUEST TO CHARGE NO. 2

## PRELIMINARY INSTRUCTIONS BEFORE TRIAL - THE ORDER OF THE CASE[2]

The case will proceed in the following order:

First, Plaintiff will make an opening statement outlining its case. Immediately after Plaintiff's statement, Defendant will make an opening statement outlining its case. None of the parties are required to make an opening statement. What is said in opening statements is not evidence, but is simply designed to provide you with an introduction as to the evidence which the parties intend to produce.

Second, Plaintiff will introduce evidence in support of its claim. At the conclusion of Plaintiff's case, Defendant may introduce evidence. Defendant, however, is not obligated to introduce any evidence or to call any witnesses. If Defendant introduces evidence, Plaintiff may then introduce rebuttal evidence.

Third, the parties may present closing arguments to you as to what they consider the evidence has shown and as to the inferences which they contend you should draw from the evidence. What is said in closing arguments, just as what is said in opening statements, is not evidence. The arguments are designed to present to you the contentions of the parties based on the evidence introduced.

Fourth, I will instruct you on the law which you are to apply in reaching your verdict. You will then decide the case.

---

[2] O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, § 101.02 Order of Trial – Modified (5th ed. 2001).

## DEFENDANT'S REQUEST TO CHARGE NO. 3

## PRELIMINARY INSTRUCTIONS AFTER TRIAL - DUTIES OF JURORS[3]

MEMBERS OF THE JURY, now that you have heard the evidence and the arguments it becomes my duty to give you the instructions of the Court as to the law applicable in this case. My instructions will cover three areas: first, some instructions about the general rules that define and control your duties; second, the instructions that supply the law applicable to the claims and defenses in the case; and, third, some guidelines and rules for your deliberations.  A copy of these instructions will be available for you in the jury room to consult if you find it necessary.

### DUTIES OF THE JURY:

In defining the duties of the jury, let me first give you a few general rules:

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them to be from the evidence in the case.

The questions you must decide will be submitted to you in the form of a special verdict form consisting of specific questions for you to answer.  You must answer these questions by applying the facts as you find them to be.  I shall give to you the rules of law that apply to these questions.  You must apply them in arriving at your answers.

You are not to single out any one instruction alone as stating the law, but, instead, must consider the instructions as a whole.  Nor are you to be concerned with the wisdom of any rule of law stated by me.  You are obligated to follow the law.

Nothing I say in these instructions is to be taken as an indication that I have any opinion, one way or the other, about the facts of the case.  It is not my function to determine the facts, but rather yours.

---

[3] O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 103.01 Duties of the Court and Jury - General Introduction -Modified (5th ed. 2001).

You must perform your duties as jurors without bias or prejudice to any party.  You must follow the law as I give it to you, whether you agree with it or not.  The law does not permit you to be governed by sympathy, prejudice or public opinion.  You are to treat all parties equally.

All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict.

## DEFENDANT'S REQUEST TO CHARGE NO. 4

## NOTETAKING

During this trial, I will permit you to take notes.  Of course, you are not obliged to take notes.  If you do not take notes, you should not be influenced by the notes of another juror, but should rely upon your own recollection of the evidence.

Because many courts do not permit note taking by jurors, a word of caution is in order. You must not allow your note taking to distract you from the proceedings.

Frequently, there is a tendency to attach too much importance to what a person writes down.  Some testimony that is considered unimportant at the time presented, and thus not written down, may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law.

Accordingly, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your memory should be your greatest asset when it comes time to deciding this case.

**DEFENDANT'S REQUEST TO CHARGE NO. 5**

**STATEMENTS OF COUNSEL ARE NOT EVIDENCE/JUDICIAL NOTICE/CATEGORIES OF EVIDENCE[4]**

Statements and arguments of counsel are not evidence in the case.  While the attorneys may present explanations for their clients, these statements and arguments are not evidence.  The attorneys are not witnesses in this case.  Evidence is introduced by witnesses, not by attorneys.  Also, any evidence to which I have sustained an objection and evidence which I have stricken must be entirely disregarded.

The Court may take judicial notice of certain facts or events.  When the Court declares it will take judicial notice of some fact or event, the jury must, unless otherwise instructed, accept the Court's declaration as evidence, and regard as proven the fact or event which has been judicially noticed.

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses, regardless of which party may have called them; all exhibits received in evidence, regardless of who may have produced them; all facts which may have been admitted or stipulated; and all facts and events which may have been judicially noticed.

---

[4] O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 103.30 Evidence In The Case – Modified (5th ed. 2001).

## DEFENDANT'S REQUEST TO CHARGE NO. 6

## STATEMENTS BY THE COURT DO NOT CONSTITUTE EVIDENCE[5]

The law of the United States permits Judges to comment to the jury on the evidence in the case.  Such comments are only the expression of the Judge's opinion as to the facts. They are not evidence. You may disregard them entirely, because you as jurors are the sole judges of the facts and are not bound by my comments or opinions.

---

[5] O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 103.33  Court's Comments Not Evidence – Modified (5th ed. 2001).

**<u>DEFENDANT'S REQUEST TO CHARGE NO. 7</u>**

**<u>BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE</u>**[6]

The burden is on the Plaintiff, in a civil action such as this, to prove every essential element of its claims by a preponderance of the evidence.  If the proof should fail to establish any essential element of any claim by a preponderance of the evidence in the case, the jury should find for the Defendants as to that claim.

To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds the belief that what is sought to be proved is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. This rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

If you find that the credible evidence on a given issue is evenly divided between the parties – that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue <u>against</u> the party who has this burden of proof.  That is because the party bearing this burden must prove more than simple <u>equality</u> of evidence.  On the other hand, the party with this burden of proof need not prove more than preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof – that what the party claims is more likely true than not – then that element has been proven by a preponderance of the evidence.

---

[6] O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, § 103.30 Evidence In The Case and § 104.01 Preponderance Of The Evidence – Modified (5th ed. 2001).

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, the jury may, unless otherwise instructed, consider all the testimony in this case, as I previously identified for you.

## DEFENDANT'S REQUEST TO CHARGE NO. 8

## DIRECT AND CIRCUMSTANTIAL EVIDENCE[7]

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence.  Direct evidence is when a witness testifies about something he or she knows by virtue of his or her own senses – something he or she has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts.  There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day.  Assume that the courtroom blinds were drawn and you could not look outside.  As you were sitting here, someone walked in with an umbrella which was dripping wet.  Then a few minutes later, another person also entered with a wet umbrella.  Now you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from one established fact the existence or non-existence of some other fact.

---

[7] L. Sand et al., Modern Federal Jury Instructions (Civil), Instruction 74-2 Direct and Circumstantial Evidence (2002).

Circumstantial evidence is of no less value than direct evidence; for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

**DEFENDANT'S REQUEST TO CHARGE NO. 9**

**INFERENCES DEFINED/PRESUMPTION OF REGULARITY[8]**

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the bald statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You are permitted to draw, from facts which you find have been proved, any reasonable inferences as seem justified in the light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead the jury to draw from facts that have been established by the evidence in the case.

Unless and until outweighed by evidence in the case to the contrary, you may find that official duty has been regularly performed; that private transactions have been fair and regular; that the ordinary course of business or employment has been followed; that things have happened according to the ordinary course of nature and the ordinary habits of life; and that the law has been obeyed.

---

[8] O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 104.20 Inferences Defined; § 104.21 Presumption of Regularity – Modified (5th ed. 2001).

**DEFENDANT'S REQUEST TO CHARGE NO. 10**

**CREDIBILITY OF WITNESSES[9]**

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You have had the opportunity to observe the witnesses.  It is up to you to decide how believable the witnesses were in their testimony.  In deciding the weight to give to the testimony of a witness, you should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  Thus, you may, for example, be guided by the appearance and conduct of the witness, the manner in which the witness testifies, the character of the testimony given, and/or evidence contrary to the testimony given.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive, state of mind, and demeanor or manner while on the stand.  Consider the witness' ability to observe the matters as to which he or she has testified, and whether he or she impresses you as having an accurate recollection of those matters.  Consider also any relation which each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses, may or may not cause the jury to discredit such testimony.  Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure to recollect, is not an uncommon experience.  In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or to an

---

[9] O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions,</u> § 105.01 Discrepancies in Testimony - Modified (5th ed. 2001).

unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.  But keep in mind that credibility is not necessarily an all or nothing proposition.  You may discredit a witness on one point but credit the same witness on a different point.  Additionally, you may decide that if a witness is not credible on one point, you feel that this is enough to discredit other aspects of their testimony, or all of their testimony.

You may, in short, accept or reject the testimony of any witness in whole or in part.

## DEFENDANT'S REQUEST TO CHARGE NO. 11

## INTERESTED WITNESSES

One of the Plaintiff's owners, Titi Branch, testified before you. She is an interested party to this action.  Defendant's Owner, Robert Bell, testified before you.  He is an interested party to this action.  Other witnesses may also have a lesser degree of interest in the outcome of the case.

An interested witness is not necessarily less credible than a disinterested witness. The fact that a witness is interested in the outcome of the case does not mean that the witness has not told the truth.  It is for you to determine from the witness's demeanor on the stand, and such other tests as your experience dictates, whether or not the witness's testimony has been colored, intentionally or unintentionally, by the witness's interest.  You may, if you deem it proper under all the circumstances, disbelieve the testimony of such a witness, even though it has not been impeached or otherwise contradicted.  However, you are not required to disbelieve such a witness, and may accept whatever part of the witness's testimony you think is reliable, while rejecting whatever you think is unreliable.  You may choose to disbelieve all of an interested witness's testimony if you find that the witness's interest in this litigation has colored a portion of the witness's testimony.

## DEFENDANT'S REQUEST TO CHARGE NO. 12

## EXPERT WITNESSES[10]

During the trial you heard the testimony of Dr. Bruce Isaacson and the testimony of Rob Wallace, who were described as experts and were called by Defendant to testify about the likelihood of the confusion of an appreciable number of prudent purchasers as to whether the Aunt Jackie's hair care products are connected with Miss Jessie's.

A person's training and experience may make that witness a true expert in a technical field. The law allows that person to state an opinion here about matters in that particular field. Merely because a witness has expressed an opinion does not mean, however, that you must accept this opinion. The same as with any other witness, it is up to you to decide whether you believe their testimony and choose to rely upon it. Part of that decision will depend on your judgment about whether the witness's background of training and experience is sufficient for the witness to give the expert opinion that you heard. You must also decide whether the witness's opinions were based on sound reasons, judgment, and information.

You should consider any expert opinion offered and give it such weight as you may think it deserves, and should consider such issues as you would consider in evaluating the testimony of any witness, including their education and experience, the basis for their opinions, other evidence admitted, including the opinions of other experts, their demeanor, their biases, whether they were compensated for their testimony, and anything else that you find relevant. If you should conclude that these factors outweigh the testimony, then you may disregard it. You are the sole judges of facts in this case.

---

[10] Fifth Circuit Pattern Jury Instructions-Civil, 2.19.

## DEFENDANT'S REQUEST TO CHARGE NO. 13

## IMPEACHMENT OF TESTIMONY[11]

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if it is done voluntarily and intentionally, and not because of a mistake or accident or other innocent reason.

---

[11] O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 105.04 Impeachment — Inconsistent Statements Or Conduct (Falsus In Uno Falsus In Omnibus) (5th ed. 2001).

## DEFENDANT'S REQUEST TO CHARGE NO. 14

## ALL AVAILABLE WITNESSES OR EVIDENCE NEED NOT BE PRODUCED[12]

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.  You are not to rest your decision on what some absent witness who was not brought in might or might not have testified to.  No party has an obligation to present cumulative testimony.

---

[12] O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 105.11 All Available Witnesses Or Evidence Need Not Be Produced (5th ed. 2001) – Modified.

## DEFENDANT'S REQUEST TO CHARGE NO. 15

## ORAL ADMISSIONS[13]

Evidence as to any oral admissions claimed to have been made outside of Court by a party to any case should always be considered with caution and weighed with great care.  The person making the alleged admission may have been mistaken, or may not have expressed clearly the meaning intended; or the witness testifying to an alleged admission may have misunderstood, or may have misquoted what was actually said.

---

[13] Devitt, Blackmar and Wolff, <u>Federal Jury Practice and Instructions</u>, § 72.12 Oral Admissions —  Viewed With Caution.

## DEFENDANT'S REQUEST TO CHARGE NO. 16

## All PERSONS EQUAL BEFORE THE LAW[14]

You should consider each instruction given to apply separately and individually to the Plaintiff and to the Defendant.  This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A company is entitled to the same fair trial at your hands as a private individual.  The law does not respect people more than companies.  All persons and corporations stand equal before the law, and are to be dealt with as equals in a Court of Justice.

---

[14] O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 103.12 All Persons Equal Before the Law - Organizations - Modified (5th ed. 2001).

22

**DEFENDANT'S REQUEST TO CHARGE NO. 17**

**CONTENTIONS OF THE PARTIES**

I am briefly going to state the claims of the respective parties, so that you can have a framework in which to place the explanation of the substantive law to be applied to each claim. In summarizing the claims, I express no opinion of the facts, because you are the sole judges of the facts.  If I should inaccurately or insufficiently state any particular fact in the case, then you are to disregard that, as you alone are the judges of the facts.  You will consider all the facts, the testimony from the witness stand, the physical facts and all inferences you deem legitimate.

Plaintiff has asserted claims against Defendant of Federal Trademark Infringement Pursuant to Section 32(1)(A) of the Lanham Act (15 U.S.C. § 1114); Unfair Competition and False Designation of Origin Pursuant to Section 43(A) of the Lanham Act (15 U.S.C. § 1125 (A); and Common Law Unfair Competition.  The term "trademark" includes any word, name, symbol or device or any combination thereof, adopted and used by a manufacturer or merchant to identify and distinguish its goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

The main function of a trademark is to identify and distinguish goods as a product of a particular manufacturer or merchant and to protect its goodwill against the sale of another's product as its own.

A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods the purchaser wants. A trademark signifies that all goods bearing the mark derive from a single source and are equivalent in quality. There is therefore a public interest in the use of trademarks.

23

The law entitles the owner of a trademark to permit or exclude others from using that trademark. When a manufacturer or merchant has established a trademark right with respect to a product before anyone else, the right to use it becomes an exclusive right, and the trademark becomes the property of the manufacturer or merchant. No other person may then use the same or similar words, symbols, designs, or devices in any manner likely to cause consumer confusion regarding the source or origin of those goods. The owner of a trademark may enforce the right to exclude others in an action for trademark infringement.[15]

In this case, the plaintiff, Akiro LLC, seeks to recover money damages from the defendant, House of Cheatham, Inc., for what the plaintiff claims to be trademark infringement. The defendant denies infringing the trademark. The legal principles regarding the law of trademark infringement discussed in these instructions result from attempts to balance the following conflicting policy objectives:

(1) the need to protect the public from being misled about the nature and source of the goods they buy;

(2) the need to protect the property rights of a business to identify itself and its goods to the public; and

(3) the need to try to achieve these goals while encouraging fair competition among those providing goods in our free-market economy.

In short, fair competition among those manufacturing and selling goods is encouraged, but unfair competition, including trademark infringement, is destructive of this competitive process and is illegal.

---

[15] Modern Federal Jury Instructions-Civil P 86A.01.

24

Because of the conflicting policy objectives involved in cases of this type, each case must be decided largely on its specific facts. You, the jury, are the judge of the facts.[16]

Plaintiff, Akiro LLC, has had the valid, registered trademark "Miss Jessie's" with respect to hair care products since 2003.  Defendant House of Cheatham, Inc., has had the valid, registered trademark "Aunt Jackie's" with respect to hair care products since 2012.  Plaintiff claims that Defendant's use of the Aunt Jackie's trademark is confusingly similar to Plaintiff's Miss Jessie's trademark, and that the use of Aunt Jackie's on hair care products is likely to cause consumer confusion regarding the source or origin of those goods.

Defendant House of Cheatham, Inc., argues that it took all necessary steps to distinguish its products from those of Akiro LLC or any other producer of hair care products and that there is no likelihood of consumer confusion.

I will now instruct you on the law applicable to each of Plaintiff's claims.  Let me remind you that to find for the Plaintiff to prevail on any of its claims, you must find that it has met its burden of proving every element of that claim by a preponderance of the evidence.

---

[16] Modern Federal Jury Instructions – Civil P 86A.02

## DEFENDANTS' REQUEST TO CHARGE NO. 18

## TRADEMARK INFRINGEMENT

I am now going to instruct you on the elements of Plaintiff's trademark infringement claims.

To find liability for trademark infringement, you, the jury, must find from a preponderance of the evidence that:

a. the Plaintiff has established Miss Jessie's as a trademark for plaintiff's products;

b. the Plaintiff had established Miss Jessie's as a trademark before the Defendant began to market the Defendant's products in the area where the Plaintiff sells its products; and

c. the Defendant used Aunt Jackie's in a manner likely to cause confusion about the source of the products among numerous ordinarily prudent purchasers.[17]

The Plaintiff has the burden of proving each of these elements by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the Plaintiff has proved each element. If you find that the Plaintiff has proved these elements by a preponderance of the evidence, you may then find the Defendant liable for trademark infringement. You will then consider the issue of damages under separate instructions.[18]

The parties have stipulated that Plaintiff registered and used Miss Jessie's as a trademark for hair care products before Defendant registered and used Aunt Jackie's as a trademark for hair care products.

---

[17] *Gruner + Jahr USA Publishing Div. of Gruner + Jahr Printing & Publishing Co. v. Meredith Corp.*, 991 F.2d 1072, 1077 (2nd Cir. 1993); *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1138 (2nd Cir. 1979).
[18] Modern Federal Jury Instructions – Civil 86A-9

You must consider whether the Defendant used Aunt Jackie's in a manner likely to cause confusion regarding the source of these goods among numerous consumers using ordinary care and prudence in the purchase of these goods. In other words, you must find that numerous ordinarily prudent purchasers, buying under the usual conditions and exercising ordinary care, would be likely to purchase the Defendant's product in the belief that it was the Plaintiff's product.

You must determine only whether there is likelihood of confusion, so it is unnecessary that the evidence show that any specific person has been confused or misled. It is enough if you find that the consequences of the defendant's use of Aunt Jackie's in all reasonable probability would be to confuse a significant portion of the public regarding the source, sponsorship, approval, or affiliation of the products.[19]

A finding that the consumers are sophisticated weighs against a finding of a likelihood of confusion.[20]

In deciding whether there is a likelihood of confusion, you should consider the following:

(1) the strength of Plaintiff's mark;

(2) the similarity of Plaintiff's and Defendant's marks;

(3) the proximity of the products;

(4) the likelihood that Plaintiff will "bridge the gap;" (i.e., enter a market related to that in which the Defendant sells its product);

(5) actual confusion between products;

(6) Defendant's good or bad faith in adopting the mark;

---

[19] Modern Federal Jury Instructions – Civil P 86A-15.
[20] *N.Y. State Soc'y of CPA's v. Eric Louis Assocs.*, 79 F. Supp. 2d 331, 341 (S.D.N.Y. 1999).

(7) the quality of Defendant's product; and

(8) the sophistication of the buyers.[21]

The weight to be given to each of these factors is up to you to determine. No particular factor or number of factors is required to prove likelihood of confusion among numerous ordinarily prudent consumers.  Each factor should be evaluated in terms of how it bears on the ultimate question of likelihood of confusion regarding the source of these goods among consumers using ordinary care and prudence in the purchase of these goods.[22]

**Factor 1:** (strength of plaintiff's mark)

In demonstrating the strength of a trademark, Plaintiff must establish either that the mark is inherently distinctive or alternatively, that the mark has acquired secondary meaning, that is, an acquired distinctiveness. The strength of a trademark refers to its tendency to identify the goods sold under the mark as emanating from a particular source. The concept of strength encompasses both inherent distinctiveness and acquired distinctiveness.[23]

Inherent distinctiveness

A trademark is inherently distinctive when its intrinsic nature serves to identify a particular source. For example, in the context of word marks, marks that are arbitrary ("Camel" cigarettes), fanciful ("Kodak" film), or suggestive ("Tide"  laundry detergent) are held to be inherently distinctive.  Inherently distinctive marks almost automatically tell a customer that they refer to a brand. [24]

---

[21] *Dan-Foam A/S & Tempur-Pedic, Inc. v. Brand Named Beds*, LLC, 500 F. Supp. 2d 296, 306 (S.D.N.Y. 2007).
[22] *Id.*
[23] *MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, 2004 U.S. Dist. LEXIS 3644, *7 (S.D.N.Y. Mar. 8, 2004); *United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 527 (S.D.N.Y. 2011); *Virgin Enters. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003)
[24] *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 293 (S.D.N.Y. 2002).

Secondary meaning, or acquired distinctiveness

A trademark has acquired secondary meaning, or has an acquired distinctiveness, when it has become so associated in the mind of the public with the entity or its product that it identifies the goods sold by that entity and distinguishes them from goods sold by others, or when a substantial segment of the relevant consumer group has made the requisite association between the product and the producer.

In other words, a mark has "acquired distinctiveness," when it is famous, or the extent to which prominent use of the mark in commerce has resulted in a high degree of consumer recognition.[25]

**Factor 2:** (similarity of Plaintiff's and Defendant's marks)

In determining the second factor, the similarity of the marks at issue, you should consider whether the marks create the same overall commercial impression when viewed separately. In assessing the similarity of marks, you may examine the similarity or dissimilarity between them in appearance, sound, and meaning. You may rely upon your own assessment in making this determination.[26]  Each mark must be compared in its entirety, in terms not only of sound but of appearance and meaning, because juxtaposing parts of each mark will not show whether the marks as a whole are confusingly similar.[27]  Consumers in the marketplace actually hear and view the terms as a whole rather than in a piecemeal fashion.[28]  Even if parts of two marks sound

---

[25] *Eventide Inc. v. Dod Elecs. Corp.*, 1995 U.S. Dist. LEXIS 5404, *45 (S.D.N.Y. Apr. 18, 1995); *Centaur Communications v. A/S/M Communications*, 830 F.2d 1217, 1221 (2d Cir. 1987); *Girls Clubs of America, Inc. v. Boys Clubs of America, Inc.*, 683 F. Supp. 50, 53 (S.D.N.Y. 1988); *Virgin Enters. v. Nawab*, 335 F.3d 141, 147 (2d Cir. 2003).

[26] *MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, 2004 U.S. Dist. LEXIS 3644, *7-8 (S.D.N.Y. Mar. 8, 2004); *Nikon, Inc. v. Ikon Corp.*, 803 F. Supp. 910, 926 (S.D.N.Y. 1992); *United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 528 (S.D.N.Y. 2011).

[27] *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 117 (2d Cir. N.Y. 1984); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 528 (S.D.N.Y. 2011).

[28] *Malaco Leaf, AB v. Promotion in Motion, Inc.*, 287 F. Supp. 2d 355, 372 (S.D.N.Y. 2003).

29

similar that alone is not dispositive.[29]  Even if you find an overall similarity between the marks, you still must find that such similarity is more likely than not to cause confusion among numerous ordinarily prudent consumers.[30]

**Factor 3:** (the proximity of the products)

The "proximity of products" concerns whether and to what extent the two products compete with each other, a question which requires examination of the nature of the products themselves, the markets in which they are sold, and the customers to whom the products appeal. The inquiry focuses on the likelihood that customers may be confused as to the source of the products, rather than as to the products themselves.

To establish proximity that is likely to cause confusion, the Plaintiff does not have to establish its products are identical to those offered by the Defendant, but must show that the parties' products are sufficiently related that customers are likely to confuse the source of origin. The products need not compete with one another.  However, price is an aspect of the parties' products that you should compare in determining proximity.[31]  Confusion, or the likelihood of confusion, not competition, is the real test.

The "proximity of products" factor may be considered together with the eighth factor, "sophistication of the customers." The "sophistication of buyers" and "proximity of products" are analogous because the sophistication question recognizes that the likelihood of confusion between the products at issue depends in part on the sophistication of the relevant purchasers.

---

[29] *Streetwise Maps v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998).
[30] *Aceto Agric. Chems. Corp. v. Bayer Aktiengesellschaft*, 2012 U.S. Dist. LEXIS 106035, *18-19 (S.D.N.Y. July 30, 2012).
[31] *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 316 (S.D.N.Y. 2000), *Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.*, 2006 U.S. Dist. LEXIS 25291, 27-28 (S.D.N.Y. May 1, 2006).

The greater the proximity the greater there is some likelihood of customer confusion.[32]

**Factor 4:** (likelihood that plaintiff will "bridge the gap")

The fourth factor looks at whether the senior user of the mark, the Plaintiff, is likely to enter the market in which the junior user, the Defendant, is operating, that is, "bridge the gap." "Bridging the gap" is closely related to the "proximity of the products" factor. This factor contemplates the senior user's interest (i.e., the Plaintiff's interest) in preserving avenues of expansion and entering into related fields. This factor depends not as much on objective evidence of actual expansion or potential expansion but more on whether it is reasonable for the ordinary purchaser to assume such expansion, that is to assume that Plaintiff would move from the premium priced hair care product market to the lower priced hair care product market.[33]

**Factor 5:**  (actual confusion between products)

This factor inquires whether there is evidence of consumer confusion that enables a seller to pass off his goods as the goods of another. Actual confusion is not required; only a likelihood of confusion as to the source of the products is needed.[34]  Though not essential for a finding of trademark infringement, actual confusion is the most positive proof of likelihood of confusion.[35] However, even if there is evidence of actual confusion, two examples of actual confusion constitute *de minimis* evidence and do not demonstrate a likelihood of confusion.[36]

Although evidence of actual confusion is not necessary for trademark infringement, the absence of such evidence may favor the junior user, i.e., the Defendant. Evidence of actual

---

[32] *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 284-85 (S.D.N.Y. 1998); *H. Lubovsky, Inc. v. Esprit de Corp.*, 627 F. Supp. 483, 488 (S.D.N.Y. 1986).
[33] *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 286-87 (S.D.N.Y. 1998).
[34] *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 287 (S.D.N.Y. 1998).
[35] *MasterCard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, 2004 U.S. Dist. LEXIS 3644, *8 (S.D.N.Y. Mar. 8, 2004).
[36] *C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir. 1985); *Nora Bevs. v. Perrier Group of Am.*, 269 F.3d 114, 124 (2d Cir. Conn. 2001).

confusion, or the lack thereof, may consist of survey evidence, such as that produced by the Defendant.[37]  You may place such weight on survey evidence as you deem appropriate.[38]

**Factor 6:** (defendant's good or bad faith in adopting the mark)

In assessing this factor, you are to determine whether the junior user, the Defendant, adopted its mark with the intention of capitalizing on the reputation and goodwill of the senior user, the Plaintiff, **and** capitalizing on any potential confusion between the Defendant's and the Plaintiff's products.[39]

Knowledge of the senior user's mark (Plaintiff's mark), while relevant to this determination, does not without more give rise to an inference of bad faith.  In fact, absent confusion, imitation of certain successful features in another's product is not unlawful.[40]  Selection of a mark that reflects the product's characteristics or attracts customers, on the other hand, indicates good faith. Additional relevant factors that show good faith include a request for a trademark search and the reliance on the advice of counsel.[41]

Even if there is a showing of bad faith, the issue is whether consumers are likely to be confused as to the source of a product.  Bad faith alone does not establish confusion.[42]

**Factor 7:** (quality of defendant's product)

This factor generally considers whether the reputation of the senior user (the Plaintiff) could be tarnished by allegedly inferior merchandise of the junior user (the Defendant).[43]  This

[37] *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 319 (S.D.N.Y. 2000).
[38] *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1272 (S.D.N.Y. 1990).
[39] *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 324 (S.D.N.Y. 2000).
[40] *Playtex Prods. v. Georgia-Pacific Corp.*, 390 F.3d 158, 166 (2d Cir. 2004).
[41] *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 324 (S.D.N.Y. 2000).
[42] *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 287 (S.D.N.Y. 1998).
[43] *Id.*

factor reflects the law's recognition that a prior owner should not be subjected to the risk that the public perception of its product will suffer if it is associated with a product of inferior quality.[44]

**Factor 8:** (the sophistication of the buyers)

The more unsophisticated the consumers are, the greater the likelihood of confusion.[45]  A finding that the consumers are sophisticated weighs against a finding of a likelihood of confusion.[46]

No one of these eight factors or considerations is conclusive, but each should be weighed in light of the total evidence presented at the trial.  The review of these factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins.[47]

In light of these considerations and your common experience, you must determine if ordinary consumers, neither overly careless nor overly careful, would be, upon encountering Aunt Jackie's products, confused about the source, sponsorship, approval, or affiliation of the parties' products.[48]

---

[44] *H. Lubovsky, Inc. v. Esprit de Corp.*, 627 F. Supp. 483, 488 (S.D.N.Y. 1986).
[45] *Jordache Enters. v. Levi Strauss & Co.*, 841 F. Supp. 506, 520 (S.D.N.Y. 1993).
[46] *N.Y. State Soc'y of CPA's v. Eric Louis Assocs.*, 79 F. Supp. 2d 331, 341 (S.D.N.Y. 1999).
[47] *Playtex Prods. V. Georgia-Pacific Corp.*, 390 F.3d 158, 166 (2nd Cir. 2004).
[48] Modern Federal Jury Instructions-Civil P 86A.02.

**DEFENDANT'S REQUEST TO CHARGE NO. 19**

**COMMON LAW UNFAIR COMPETITION**

Now I will instruct you on the substantive law to be applied to Plaintiff's common law unfair competition claim.

The elements of unfair competition under New York law closely parallel the elements of unfair competition under the Lanham Act, but it requires additional evidence. To prevail on a claim of unfair competition under New York law, you must find two things by a preponderance of the evidence. First, the Plaintiff must show the likelihood of confusion among numerous ordinarily prudent purchasers as to the source of the allegedly infringing products. Second, the Plaintiff must show bad faith on the part of Defendant.[49]

The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another likely to cause confusion or to deceive purchasers as to the origin of the goods.[50] As used in these instructions, bad faith is having an ulterior motive; it is dishonesty of belief or purpose.[51]

If you find that Plaintiff has satisfied all the elements of a claim for trademark infringement by a preponderance of the evidence, then you must also determine if the Defendant acted with bad faith. If you find that Defendant committed trademark infringement but you determine the Defendant did not act with bad faith, then you must find for Defendant.

---

[49] *Rockland Exposition, Inc. v. Alliance of Auto. Serv. Providers*, 2012 U.S. Dist. LEXIS 131588, *91-92 (S.D.N.Y. Sept. 11, 2012); *Tiffany Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 519 (S.D.N.Y. 2008); *Medisim Ltd. v. BestMed LLC*, 2012 U.S. Dist. LEXIS 169042, *19 (S.D.N.Y. Nov. 28, 2012).
[50] *United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 538 (S.D.N.Y. 2011).
[51] *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 2007 U.S. Dist. LEXIS 89556, *6, n. 2 (S.D.N.Y. Dec. 4, 2007); *Strobl v. New York Mercantile Exchange*, 561 F. Supp. 379, 382 (S.D.N.Y. 1983).

## DEFENDANTS' REQUEST TO CHARGE NO. 20

## DAMAGES[52]

If you find for the Plaintiff on Plaintiff's trademark infringement claim or common law unfair competition claim, you must determine Plaintiff's damages. The Plaintiff has the burden of proving damages by a preponderance of the evidence. Two kinds of damages can be considered in this case: (1) compensatory damages, and (2) punitive damages.

Compensatory damages consist of the Plaintiff's direct economic losses and out-of-pocket expenses resulting from the effect of the Defendant's conduct on the Plaintiff. In other words, compensatory damages means the amount of money that will reasonably and fairly compensate the Plaintiff for any injury you find was caused by the Defendant's infringement of the Plaintiff's trademark. The basic question for your consideration is: What is the amount of money required to right the wrong done to the Plaintiff by the Defendant?

Punitive damages consist of that amount of money awarded by you that is not to be considered as compensation to the Plaintiff for the wrong done, but that instead serves as a punishment to the Defendant and as a deterrent to others not to engage in such conduct.

## Compensatory Damages[53]

Compensatory damages means the amount of money that will reasonably and fairly compensate the Plaintiff for any injury you find was caused by the Defendant's infringement of the Plaintiff's trademark. In determining compensatory damages, the difficulty or uncertainty in ascertaining the precise amount of any damages does not preclude recovery; instead, you should use your best judgment in determining the amount of such damages. You may not, however, determine damages by speculation or conjecture.

---

[52] Modern Federal Jury Instructions – Civil P 86A-22.
[53] *Id.*, Civil P 86A-23.

In assessing compensatory damages, you should consider whether the Defendant's infringement of the trademark caused the following:

(1) any injury to Plaintiff's reputation;

(2) any injury to the product's or the Plaintiff's goodwill, as that term is defined in this instruction, including injury to the Plaintiff's general business reputation;

(3) any loss of Plaintiff's sales; and

(4) any loss of Plaintiff's profits.

In addition, you may also consider any evidence that the Defendant's infringement will necessitate prospective costs, including any expense incurred by the Plaintiff in preventing customers from being deceived, misled, or confused, or any cost of future corrective advertising reasonably required to correct any customer confusion. Such a prospective award, however, may not exceed the actual damage to the value of the trademark at the time of the infringement. Lastly, you may consider any other factors that bear on Plaintiff's actual damages.

In assessing damages for injury to the Plaintiff's goodwill, you are instructed that the goodwill of a company is an intangible business value that reflects the basic human tendency to do business with merchants who offer products of the type and quality the customer desires and expects. The goodwill associated with a particular product or business may be symbolized by the consuming public's acceptance and recognition of a trademark. The goodwill attached to a product is often a part of the company's overall goodwill. It is possible, therefore, that the general goodwill of a company may be damages by the loss of goodwill to a particular product. Whether this has occurred is a question of fact for you to answer.

If you find that the Plaintiff's goodwill has been damaged, either by injury to its general business reputation, or by injury to the goodwill of the product, you may assess whatever

compensatory damages you find justified by the evidence. The measure of the Plaintiff's damage is the difference between the value of such goodwill before and after the acts of the Defendant.

The fact that the Defendant did not actually intend, anticipate, or contemplate that any of these categories of compensatory damages would occur is not a basis for you to deny awarding the damages to the Plaintiff.

If you find that the evidence before you is insufficient to show that the Plaintiff has sustained any substantial damages, then you may return a verdict for the Plaintiff on trademark infringement and fix the amount of the compensatory damages in a nominal sum such as one dollar.

As an additional category of compensatory damages, the Plaintiff is entitled to any profits earned by the Defendant that are attributable to the Defendant's infringement. You may not, however, include in any award of such profits any amount that you already took into account in assessing compensatory damages under prior instructions.

Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Defendant's receipts from using the infringing mark in the sale of its product. The Plaintiff has the burden of proving a Defendant's gross receipts by a preponderance of the evidence.

Expenses are all costs incurred in producing the gross revenue. The Defendant has the burden of proving the expenses. The Defendant also bears the burden of proving that any portion of the profit is attributable to factors other than the infringement. The Defendant must prove each of these by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the products using the trademark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement.

37

**Punitive Damages**

If you should find that the Defendant is liable for state common law unfair competition, then you have the discretion to award punitive damages in addition to compensatory damages. Punitive damages are not available and cannot be awarded to Plaintiff under federal trademark law.

The purpose of punitive damages is to punish Defendant for shocking conduct and to set an example to deter others from committing similar acts in the future.  Under New York law, a plaintiff in an unfair competition case can recover punitive damages if the Defendant's conduct has constituted gross, wanton, or willful fraud or other morally culpable conduct to an extreme degree.[54]

The requisite degree of culpability may be found where, for example, the fraud on the Plaintiff was not an isolated transaction incident to an otherwise legitimate business, but was rather a gross and wanton fraud upon the public, or where there has been such a gross disregard of contractual obligations as to constitute morally culpable conduct.[55]

---

[54] *Bear U.S.A., Inc. v. JooAn, Co.*, 2001 U.S. Dist. LEXIS 637, *25 (S.D.N.Y. Jan. 25, 2001); *Altadis U.S.A. v. De Tabacos*, 2001 U.S. Dist. LEXIS 6892, *18 (S.D.N.Y. May 17, 2001).
[55] *Bear U.S.A., Inc. v. JooAn, Co.*, 2001 U.S. Dist. LEXIS 637, *25 (S.D.N.Y. Jan. 25, 2001)

## **DEFENDANTS' REQUEST TO CHARGE NO. 21**

## **NO DOUBLE RECOVERY**[56]

In awarding damages, you are not permitted to award Plaintiff a double recovery for experiencing a single loss.  If two separate claims result in an award of damages to compensate Plaintiff for the same loss or injury, only one award can be made.

---

[56] *Muller v. Costello*, 997 F. Supp. 299, 303 (N.D.N.Y. 1998), *aff'd* 187 F.3d 298 (2d Cir. 1999) ("A plaintiff who brings two separate Title VII actions, which are consolidated for the purposes of trial, is entitled to recover only a single award."), *quoting Galliher v. Rubin*, 969 F. Supp. 1329 (S.D. Ga. 1997).

## DEFENDANTS' REQUEST TO CHARGE NO. 22

## CLOSING INSTRUCTIONS

I have now outlined for you the rules of law applicable to the claim in this case and the processes by which you should weigh the evidence and determine the facts. In a few minutes you will retire to the jury for your deliberations.

Traditionally, Juror Number One acts as foreperson. In order that your deliberations may proceed in an orderly fashion, you must have a foreperson, but of course, the foreperson's vote is not entitled to any greater weight than that of any other juror.

Your function, to reach a fair conclusion from the law and the evidence, is an important one. Your verdict must be unanimous.

When you are in the jury room, you may then discuss the case. It is, in fact, the duty of each of you to consult with your fellow jurors and to deliberate with a view toward reaching agreement on a verdict, if you can do so without violating your individual judgment and your conscience. In the course of your deliberations, no one should surrender conscientious beliefs of what the truth is and what the weight and effect of the evidence is. Moreover, each of you must decide the case for yourself and not merely acquiesce in the conclusion of your fellow jurors. Nevertheless, I do ask you to examine the issues and the evidence before you with candor and frankness and a proper deference to and regard for the opinions of one another. Remember that the parties and the court are relying upon you to give full and conscientious deliberation and consideration to the issues and evidence before you. By so doing, you carry out to the fullest your oaths as jurors: well and truly to try the issues of this case and render a true verdict.

If it becomes necessary during your deliberations to communicate with me for any reason, simply send me a note signed by your foreperson or by one or more other members of the jury. No member of the jury should ever attempt to communicate with me or with any court personnel by any means other than a signed writing. I will not communicate with any member of the jury on any subject touching on the merits of this case other than in writing or orally here in open court.

If you wish to have some part of the testimony repeated, or to see any of the exhibits, you may make that request. If you request to see all or some of the exhibits, we will send them into the jury room for you or make them available to you here in open court. If you request to hear certain testimony or see trial transcripts of certain portions of the testimony, I will call you into court and have the court reporter read those portions of the testimony to you or send the requested portions of the trial transcript into the jury room. You can have any of the testimony read back to you or made available to you in transcript form. I suggest, however, that you be specific in your requests so as to avoid hearing or reading testimony that you do not need to assist you in your deliberations.

If, in the course of your deliberations, you wish further help as to the law, or if you wish to hear any further explanation as to the law, you may send me a note telling me what you would like.

Bear in mind also that you are not to reveal to any person—not even in open court—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict. Any verdict you reach must be unanimous.

When you have reached a verdict, simply send me a note signed by your foreperson that you have reached a verdict. Do not indicate in the note what the verdict is. Your verdict will be

organized according to what is called a special verdict form. I am about to pass out copies of that special verdict form to you now. When you receive a copy you will see that the special verdict form is a questionnaire, which lists the following questions.

**[READ QUESTIONS]**

When you have completed the verdict form, then you will sign your names, the form will be marked as a Court Exhibit and the verdict sheet will then form the basis for the verdict that you deliver.

I will also provide each of you with a copy of these instructions. Please remember that you must follow these instructions as a whole, and should not rely on any one portion in disregard of remaining portions.

Before now asking you to retire and begin your deliberations, let me first consult with counsel to be certain I have not overlooked any point. (The attorneys will come to the side bar to make any exceptions). (Swear Marshals).

Date:   May 13, 2013                      Respectfully submitted,

                                     GORDON & REES, L.L.P.

                      By:      /s/ Mercedes Colwin
                               Mercedes Colwin, Esq. (MC 3862)
                               Michael J. Vollbrecht, Esq. (MV 1118)
                               Ryan Sestak, Esq. (RS )
                               Attorneys for Defendants
                               90 Broad Street, 23rd Floor
                               New York, New York  10004
                               (212) 269-5500

SPTBC/1082663/15480563v.1