UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AKIRO LLC,

                Plaintiff,          Case No.: 12 CV 5775 (JSR)

   - v. -

                                 **PLAINTIFF'S PROPOSED**
HOUSE OF CHEATHAM, INC.,        **JURY INSTRUCTIONS**

                Defendant.

------------------------------------------------------------ X

Plaintiff Akiro, LLC ("Plaintiff"), by its attorneys, Carter Pek, PC, respectfully submits the following proposed jury instructions for use at trial:

## PLAINTIFF'S REQUEST TO CHARGE NO. 1.

## DUTY OF JURORS

Ladies and Gentlemen, we are beginning the trial of this case.  To that end, there are certain instructions you should have in order to better understand what will be presented before you.

The party who brings a lawsuit is called the plaintiff. In this action, the Plaintiff is Akiro LLC. The party against whom the suit is brought is called the Defendant. In this action, the Defendant is House of Cheatham, Inc.

Here, Plaintiff, who offers hair care products, alleges that Defendant infringed upon its registered trademark MISS JESSIE'S when Defendant selected and used the trademark AUNT JACKIE'S in connection with the sale of competing hair care products.

After all the evidence is presented during the trial, you will be given specific instructions concerning Plaintiff's claims.

You will then decide disputed facts.  I will decide all questions of law, and I will instruct you on the law that you must follow and apply in deciding upon a verdict.

You will be asked to decide the facts of this case, so please give careful attention to the testimony and evidence presented for your consideration, bearing in mind that I will instruct you at the end of the trial concerning the manner in which you should determine the credibility or "lack of credibility" of each witness and the weight to be given to their testimony. During the trial, you should remain open and should not form any opinion(s) about the case until you have heard all of the testimony and evidence, the closing arguments of the lawyers, and my

instructions to you on the applicable law. While the trial is in process, you are not allowed to discuss the case in any manner among yourselves or with anyone else, nor should you permit anyone to discuss it in your presence.

You must perform your duties as jurors without bias or prejudice to any party. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is given to you and reach a just verdict, regardless of the consequences.

## PLAINTIFFS' REQUEST TO CHARGE NO. 2

## THE ORDER OF THE CASE

The case will proceed in the following order:

*First*, Plaintiff will make an opening statement outlining its case. Then, Defendant will make an opening statement outlining its case.

*Second*, Plaintiff will introduce evidence in support of its claim. At the conclusion of Plaintiff's case, Defendant may introduce evidence, however, Defendant is not obligated to do so. If Defendant introduces evidence, then Plaintiff may introduce additional, rebuttal evidence.

*Third*, the parties may present closing arguments to you. Such arguments are designed to present and summarize the parties' contentions based on the evidence presented before you.

*Fourth*, I will instruct you on the law that you are to apply in reaching your verdict. You will then decide the case.

## **PLAINTIFF'S REQUEST TO CHARGE NO. 3**

## **PRELIMINARY INSTRUCTIONS AFTER TRIAL - DUTIES OF JURORS**

Ladies and Gentlemen, you have now heard the evidence, and it is my duty to give you the instructions of the Court as to the law applicable in this case..

**YOUR DUTIES:**

It is your duty to follow the law as I shall state it to you, and to apply that law to the facts as you find them to be from the evidence in the case.

The questions you must decide will be submitted to you in the form of a special verdict form consisting of specific questions for you to answer.  You must answer these questions by applying the facts as you find them to be.  I shall give to you the rules of law that apply to these questions.  You must apply them in reaching your verdict.

You are not to single out any one instruction alone as stating the law, but, instead, must consider the instructions as a whole.  In addition, you are not to be concerned with the wisdom of any rule of law stated by me.  Rather, you must simply follow the law.

Nothing I say in these instructions is to be taken as an indication that I have any opinion, one way or the other, about the facts of the case.

**PLAIINTIFF'S REQUEST TO CHARGE NO. 4**

**STATEMENTS BY THE COURT DO NOT CONSTITUTE EVIDENCE**

The law of the United States permits Judges to comment to the jury on the evidence in the case. Such comments are only the expression of the Judge's opinion as to the facts. They are not evidence. You may disregard them entirely, because you as jurors are the sole judges of the facts and are not bound by my comments or opinions.

## **PLAINTIFF'S REQUEST TO CHARGE NO. 5**

## **BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

The burden is on the Plaintiff to prove every essential element of its claims by a preponderance of the evidence.

Plaintiff, however, is not required to prove every element with absolute certainty because such proof to an absolute certainty is seldom possible.

## **PLAINTIFF'S REQUEST TO CHARGE NO. 6**

## **INFERENCES DEFINED/PRESUMPTION OF REGULARITY**

You are to consider only the evidence in the case, but you are not limited to the statements of the witnesses, and you may draw any reasonable inferences that are based on the facts.

**PLAINTIFF'S REQUEST TO CHARGE NO. 7**

**IMPEACHMENT OF TESTIMONY**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness' present testimony.  If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, as you may think it deserves.  Further, if a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

## PLAINTIFF'S REQUEST TO CHARGE NO. 8

## CONTENTIONS OF THE PARTIES

I now present to you Plaintiff's general claims.

Plaintiff has brought claims against Defendant under federal trademark infringement law pursuant to Section 32(1)(A) of the Lanham Act (15 U.S.C. § 1114); unfair competition and false designation of origin pursuant to Section 43(A) of the Lanham Act (15 U.S.C. § 1125 (A); and unfair competition pursuant to New York State law.

Plaintiff claims that it adopted and used the trademark MISS JESSIE'S in connection with hair care products **before** Defendant adopted and used its trademark AUNT JACKIE'S in connection with competing hair care products that are both sold in local beauty supply stores. Plaintiff claims that Defendant adopted and used the trademark AUNT JACKIE'S knowing that the AUNT JACKIE'S trademark would likely cause confusion between the two trademarks and their respective competing hair care products. Defendant denies such claims.

Under the law, the owner of a trademark, such as Plaintiff, may exclude and prohibit another party from selecting and using its trademark or a variation of its trademark, which is likely cause confusion amongst consumers as to the source of the products. If any other party is determined to have infringed upon the trademark owner's trademark, then the other party can be ordered to stop using the infringing trademark.

# PLAINTIFF'S REQUEST TO CHARGE NO. 9

## TRADEMARK INFRINGEMENT

In order to prevail on a claim for federal trademark infringement under the Lanham Act, Plaintiff must show that it has a valid mark entitled to protection and that defendant's use of it is likely to cause confusion.[1]  A certificate of federal registration of a trademark upon the principal register by the United States Patent and Trademark Office shall be prima facie evidence of the validity of the registered mark.[2]  You must weigh eight (8) factors. It is important to note when weighing the eight (8) factors discussed below, such factors are not exhaustive.[3]

Factor No. 1: (Strength of Plaintiff's Trademark)

The strength of a mark is a measure of its tendency to identify the goods [or services] sold under the mark as emanating from a particular, although possibly anonymous, source.[4]

Factor No. 2: (Similarity of Plaintiff's and Defendant's Trademarks)

When comparing the trademarks to determine the likelihood of confusion, the correct test is whether a consumer who is somewhat familiar with the plaintiff's mark would likely be confused when presented with defendant's mark alone.[5]  In addition, the examination of the similarity of the trademarks, however, does not end with a visual comparison of the marks.

---

[1] *Spear, Leads, & Kellogg v. Rosado*, 122 F.Supp.2d 403, 405 (S.D.N.Y. 2000) (**Rakoff, J.**) (*citing Morningside Group Ltd. v. Morningside Capital Group, LLC*, 182 F.3d 133, 137 (2d Cir. 1999)) (*quoting Cadbury Bevs., Inc. v. Cott Corp*, 73 F.3d 474, 477 (2d Cir. 1996)); *see also 1-888 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 407 (2d Cir. 2005).

[2] *Spear, Leads, & Kellogg v. Rosado*, 122 F.Supp.2d 403, 405 (S.D.N.Y. 2000) (**Rakoff, J.**) (*citing Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1966)); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 114 (2d Cir. 2001) (citation omitted); *see also Lane Capital Mgm't, Inc. v. Lane Capital Mgm't, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) ("[r]egistration by the [US]PTO without proof of secondary meaning creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive. As a result, when a plaintiff sues for infringement of its registered mark, the defendant bears the burden to rebut the presumption of mark's protectability. . . .") (emphasis added).

[3] *Gucci Am., Inc. v. Accents,* No. 96-CV-9575, 1997 WL 691431, *2-3 (S.D.N.Y. Nov. 5, 1997) (**Rakoff, J.**)

[4] *Henegan Const. Co., Inc.*, 2002 WL 1300252 (*quoting The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960-61 (2d Cir. 1996))

[5] *Direct Marketing of Va., Inc. v. E. Mishan & Sons, Inc.*, 753 F.Supp. 100, 106 (S.D.N.Y. 1990)

Similarity of sound also enters into the calculation of likelihood of confusion.[6]

Factor No. 3: (The Proximity of the Products)

The next factor to consider is the "proximity" of the parties' goods, "which depends upon both (i) whether and to what extent the two services compete with each other and (ii) the nature of services themselves and the structure of the relevant market."[7] This factor concerns whether and to what extent the two products compete with each other, a question which requires examination of the nature of the products themselves, the markets in which they are sold, and the customers to whom the products appeal. The inquiry focuses on the likelihood that customers may be confused as to the source of the products, rather than as to the products themselves.

Factor No. 4: (Likelihood that Plaintiff Will "Bridge the Gap")

This factor looks at whether the senior user of the mark is likely to enter the market in which the junior user is operating, that is, "bridge the gap."[8]

Factor No. 5: (Actual Confusion)

Actual confusion is not necessary to establish a likelihood of confusion.[9] Because actual confusion is difficult to uncover in trademark cases, any evidence of actual confusion is strong evidence of likelihood of confusion.[10] Therefore, even examples of anecdotal confusion are admissible to establish actual consumer confusion.[11] Further, where little time has passed since the introduction of the competing product, it would be unfair to penalize a trademark owner for acting to protect its trademark rights before serious damage has occurred.[12]

---

[6] *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331, 1340 (2d Cir. 1975)
[7] *Hennegan, Inc.*, 2002 WL 1300252, at * 6 (citations omitted)
[8] *See id.* (citations omitted).
[9] *Time Magazine Co. v. Global Coms. Corp.*, 712 F.Supp. 1103, 1111 (S.D.N.Y. 1989) (citations omitted).
[10] *Armstrong Cork Co. v. Armstrong Plastic Covers Co.*, 434 F.Supp. 860, 871 (E.D.Mo. 1977).
[11] *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 123-24 (2d Cir. 2001).
[12] *Lois Sportswear USA v. Levi-Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1996).

**Factor No. 6:**   (Defendant's Bad Faith)

The proper inquiry for the bad faith factor is whether a defendant created and selected its trademark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product.[13]  Further, evidence of intentional copying raises the presumption that the second comer intended to create a confusing similarity.[14]  A defendant's decision to ignore counsel's prudent advice concerning trademark matters underscores a defendant's bad faith.[15]

**Factor No. 7:**   (The Quality of Defendant's Product)

For the seventh factor, you must look to whether the infringing product is of lower quality, thereby tarnishing Plaintiff's reputation if consumers confuse the two.  If the products are of equal quality, this may create confusion as to source because of that very similarity in quality.[16]  However, the Second Circuit confirms that the good quality of another party's products actually may increase the likelihood of confusion as to source.[17]

**Factor No. 8:**   (Sophistication of Purchasers)

The eighth factor recognizes that the greater the value of an article the more careful the typical consumer can be expected to be; the average purchaser of an automobile will no doubt devote more attention to examining different products and determining their manufacturer or source than will the average purchaser of a ball of twine. The degree of reliance by consumers on labels and trademarks will also vary from product to product.[18]  However, where the products are identical and the marks are identical, the sophistication of buyers cannot be relied on to prevent

---

[13] *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991).
[14] *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 586-87 (2d Cir. 1993)).
[15] *Pfizer Inc. v. Sachs*, 08 CIV. 8065 (WHP), 2009 WL 2876255, (S.D.N.Y. Sept. 8, 2009).
[16] *De Venustas*, 2007 WL 2597122; *Morningside Group*, 182 F.3d 133 (2d Cir. 1999).
[17] *Lois*, 799 F.2d at 875 (emphasis added).
[18] *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2 1126, 1137 (2d Cir. 1979).

confusion.[19]

**Of the Eight Factors, Three (3) Factors Are Critical**

The Second Circuit has explained that strength, similarity, and proximity are generally the three most important factors.[20]  In any event, even if there were a close call on any of the factors, all doubts must be resolved in favor of the senior user.[21]

---

[19] *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971),
[20] *Mobileye, Inc. v. Picitup Corp.*, No. 12 Civ. 1994, 2013 WL 830837, at *7 (S.D.N.Y. Mar. 5, 2013) (**Rakoff, J.**) (citations and quotations omitted)
[21] *Henegan*, 2002 WL 1300252.

## PLAINTIFF'S REQUEST TO CHARGE NO. 10

## COMMON LAW UNFAIR COMPETITION

The elements of unfair competition under New York State law are similar to the elements for federal unfair competition claim, such that if a finding in support of federal unfair competition will support a finding of unfair competition under New York State law[22].

---

[22] *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1345-46 (E.D.N.Y. 1994) ("whether we call the violation infringement, unfair competition or false designation of origin, the test is identical. (*citing* 15 U.S.C. § 1125 and N.Y. Gen. Bus. Law § 368-d) (emphasis added) (citations and quotation marks omitted)); *see also Calvin*, 444 F.Supp.2d at 256, 257 ("plaintiffs' claims of trademark infringement under federal and state law, false designation of origin under federal law, and unfair competition under [N.Y. G.B.L. § 349], the touchstone of [all] these claims is a likelihood of consumer confusion as to product authenticity or origin") (**Rakoff, J.**) (granting preliminary injunction sought in connection with alleged Lanham Act-related claims (and their state law equivalents)).

## PLAINTIFF'S REQUEST TO CHARGE NO. 11

## DAMAGES

If you find for Plaintiff, then must determine Plaintiff's damages to be paid by Defendant. In addition, to award for attorneys' fees, there are two types of damages can be considered in this case: (1) compensatory damages, and (2) punitive damages. Compensatory damages consist of Plaintiff's direct economic losses and out-of- pocket expenses resulting from the effect of the Defendant's conduct on Plaintiff. Punitive damages consist of that amount of money awarded by you that is not to be considered as compensation to Plaintiff for the wrong done, but that instead serves as a punishment to Defendant and as a deterrent to others not to engage in such conduct.

## PLAINITIFF'S REQUEST TO CHARGE NO. 12

## CLOSING INSTRUCTIONS

Ladies and Gentlemen, I have set forth the applicable law relating to Plaintiff's claims, and you must now prepare for your deliberations.

To that end, you must, amongst all of you, elect a foreperson, who will have the responsibility of facilitating orderly deliberations.

During your deliberations, you may discuss the case amongst your fellow jurors, yet you must decide the case for yourself.

If during the course of your deliberations, you wish to communicate with me for any reason whatsoever, please have the foreperson send me a note stating the nature of your concern, question, or request.

When you have reached a verdict, please send me a note signed by your foreperson that a verdict has been reached. Your verdict will be organized according to what is called a "Verdict Form," which is a simple questionnaire. When you have completed the Verdict Form, then you will sign your names, and the Verdict Form will be marked as a Court Exhibit.

Dated: New York, New York

May 15, 2013

Respectfully submitted,

CARTER PEK, P.C.

By: /s/ D. Reeves Carter
    **D. Reeves Carter**
    **Matthew A. Pek**
110 Wall Street, 11th Floor
New York, New York
*Attorneys for Plaintiff, Akiro, LLC*